# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

SHARON D. PHILLIPS,         :
                                 :
          Plaintiff,        :
                                 :    CIVIL CASE NO.
      v.                :    1:15-cv-03616-TWT-RGV
                                 :
CITY OF ATLANTA, *et al.*,    :
                                 :
         Defendants.    :

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION

Plaintiff Sharon D. Phillips ("Phillips") brings this employment discrimination action against defendants the City of Atlanta ("the City"), Stacie E. Gibbs ("Gibbs"), Almitra Love ("Love"), Cynthia Lee ("Lee"), Ladine Cage ("Cage"), Lankia Bristrow ("Bristrow"), Marquis James ("James"), Michelle Cain ("Cain"), Dominique Acevedo ("Acevedo"), George Turner ("Turner"), and Joseph Spillane ("Spillane"), collectively referred to as "defendants," alleging claims under 42 U.S.C. §§ 1981 and 1983, Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 et seq. ("Title VII"), and the Age Discrimination in Employment Act , 29 U.S.C. § 621 et seq. ("ADEA"). See [Docs. 19, 19-1, 19-2, 19-3, & 19-4].[1]  Phillips also asserts state

---

[1] The listed document and page numbers in citations to the record refer to the document and page numbers shown on the Adobe file reader linked to the Court's electronic filing database, CM/ECF.

law claims for a violation of the Georgia Whistleblower Act; false arrest; false imprisonment; negligent hiring, retention, and supervision; negligent infliction of emotional distress; intentional infliction of emotional distress; and for attorney's fees and punitive damages. See [Docs. 19-5, 19-6, 19-7, & 19-8]. In lieu of answering, defendants filed a motion to dismiss Phillips' first amended complaint, [Doc. 22], and alternatively moved for a more definite statement, [id., at 1], which Phillips opposes, [Doc. 24]. For the reasons that follow, it is **RECOMMENDED** that defendants' motion to dismiss, [Doc. 22], be **GRANTED**, and that defendants' alternative motion for a more definite statement be **DENIED AS MOOT**.

## I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

Phillips, an African-American female who at all times relevant to her claims in this action was over the age of 40, began her employment with the Atlanta Police Department ("APD"), in a clerical position in March 1989, and following assignments in the Validations Unit from 2002 to 2003, the Central Records Unit from 2004 to 2009, and the Validations Unit from 2009 to 2012, she was assigned to the Crime Scene Identification Unit ("ID Unit"), effective September 24, 2012, and then placed on administrative leave with pay on July 16, 2014. [Doc. 19 at 3 ¶ 7, 10 ¶¶ 19, 21-22, 11 ¶ 23, 12 ¶ 29, 14 ¶¶ 43, 45, 15 ¶¶ 50, 52, 16 ¶ 53]. Phillips alleges that

---

[2] The factual background is taken from the pleadings and supporting exhibits and does not constitute findings of fact by the Court.

in 2002, while she was assigned to the Validations Unit, she was subjected to sexual harassment by Jotashaun Johnson ("Johnson") and Erwin Grant ("Grant"), which led to her filing a complaint with the APD's Office of Professional Standards ("OPS"), that was ultimately not sustained against Grant or Johnson.  [Id. at 12 ¶¶ 29-33].[3]  Phillips alleges that following her complaint of sexual harassment, she was "subjected to increased harassment, name calling and threats by her co-workers in the Validations . . . Unit[]."  [Id. at 12 ¶ 34].

In 2004, Phillips was transferred to the Central Records Unit, and she reported that certain employees were selling police reports to members of the general public, in violation of APD's policies and procedures.  [Id. at 11 ¶¶ 23, 25].  She alleges that following this report, she "was subjected to continuous harassment, intimidation, verbal abuse and threats by members of the Central Records Unit."  [Id. at 11 ¶ 26].  For example, Phillips alleges that certain supervisors and co-workers called her "Bi-Polar, crazy, [and] Sybil" and that she was "threatened with being 'set up.'"  [Id. at

---

[3] Phillips also alleges that sometime in early 2000, she cooperated in an internal investigation of defendant Spillane and others that led to the indictment of John Woodard.  See [Doc. 19-1 at 3 ¶¶ 201-03; Doc. 19-2 at 2 ¶¶ 367-69; Doc. 19-5 at 1 ¶¶ 879-80, 2 ¶ 881].  While Phillips also claims that this investigation led to Spillane's termination, elsewhere in her first amended complaint, she alleges that Spillane is the current Deputy Chief of the APD.  See [Doc. 19-1 at 3 ¶ 203; Doc. 19-2 at 2 ¶ 369; Doc. 19 at 4 ¶ 10, 36 ¶ 155].  Phillips asserts that the "discriminatory and disparate treatment [] began subsequent to [her] reporting that she ha[d] been sexually harassed by [] Grant and [] Johnson."  [Doc. 19-1 at 3 ¶ 204; Doc. 19-2 at 2 ¶ 370; Doc. 19-5 at 2 ¶ 882].

11 ¶¶ 27-28 (internal marks omitted)].  Phillips alleges that she also reported that her supervisor in the Central Records Unit, Vickie White-Hall, harassed her and that she, along with her co-workers, told her they were "offended by [Phillips] because she worked while they slept and that she did not participate in the violation of policies and procedures as did [her] co-workers."   [Id. at 13 ¶¶ 35-36]. Subsequently, Phillips transferred from the Morning Watch to the Day Watch in the Central Records Unit, [id. at 13 ¶ 37], but she alleges that she "continued to be subjected to mistreatment and harassment and retaliation for having made prior reports of policy violations to the command . . . to include the selling of police reports by employees, alleging acts of sexual harassment against [her] and being subjected to name-calling by various employees in the Validations and Central Records Units," [id. at 13 ¶ 38].

In 2009, Phillips was transferred back to the Validations Unit, but she alleges that she "continued to be subjected to continuous harassment and mistreatment by employees in the Validations Unit[.]"   [Id. at 14 ¶¶ 43-44]; see also [Doc. 19-1 at 3-4 ¶¶ 205-06; Doc. 19-2 at 2-3 ¶¶ 371-72; Doc. 19-5 at 2 ¶¶ 883-84].  Specifically, Phillips alleges that she was called "crazy," "bi-polar," "Sybil," and "bitch" on a "consistent basis while she was employed in the Validations Unit from 2009 through the 2012 years" and that employees "would lunge at [her] while she was sitting at her

desk[.]″ [Doc. 19 at 14 ¶¶ 45-46 (internal marks omitted)]; see also [Doc. 19-1 at 4 ¶¶ 207-08; Doc. 19-2 at 3 ¶ 373, 12 ¶ 418; Doc. 19-3 at 10 ¶¶ 584-85; Doc. 19-4 at 11 ¶ 750; Doc. 19-5 at 2 ¶¶ 885-86, 9 ¶¶ 924-25; Doc. 19-7 at 9 ¶¶ 1222-23; Doc. 19-8 at 7 ¶¶ 1361-62]. Phillips asserts that she submitted multiple grievances, including several in August 2012, with respect to these incidents during the course of her employment with the APD. [Doc. 19 at 14 ¶ 41, 15 ¶¶ 48-49]; see also [Doc. 19-1 at 4 ¶¶ 210-11; Doc. 19-2 at 3 ¶¶ 374-75, 12 ¶ 421; Doc. 19-3 at 11 ¶¶ 589-90; Doc. 19-4 at 12 ¶¶ 753, 755; Doc. 19-5 at 3 ¶¶ 888-89, 10 ¶¶ 927-28; Doc. 19-7 at 9 ¶ 1224; Doc. 19-8 at 7 ¶ 1361]. On September 12, 2012, Lieutenant Clifton Johnson told Phillips to collect her belongings because she was being transferred due to her filing of grievances against several employees in the Validations Unit, and effective September 24, 2012, Phillips was transferred to the ID Unit. [Doc. 19 at 15 ¶¶ 50-52, 18 ¶¶ 62-63]; see also [Doc. 19-1 at 4 ¶ 212, 5 ¶¶ 213-14; Doc. 19-2 at 3-4 ¶¶ 376-78; Doc. 19-3 at 1 ¶¶ 540-41; Doc. 19-4 at 2 ¶¶ 711-12; Doc. 19-5 at 3 ¶¶ 890-92; Doc. 19-7 at 2 ¶¶ 1186-87; Doc. 19-8 at 1 ¶¶ 1328-29].

Phillips alleges that "[f]rom September 2012 through July 2014, [she] was subjected to the very same harassment, mistreatment and maltreatment that she endured while she was employed in the Central Records Department and the Validations Unit." [Doc. 19 at 18 ¶ 64]; see also [Doc. 19-1 at 5 ¶ 215; Doc. 19-2 at 4

¶ 379; Doc. 19-3 at 2 ¶ 542; Doc. 19-4 at 2 ¶ 713; Doc. 19-5 at 3 ¶ 893; Doc. 19-7 at 2

¶ 1188, 13 ¶ 1246; Doc. 19-8 at 1 ¶ 1330, 11-12 ¶ 1380].[4]  Specifically, she alleges that

while in the ID Unit, she was "assigned to work in an Interrogation Room," which

contained no lighting or windows and had a reflective glass from which she could

be observed, but she could not see through.  [Doc. 19 at 18 ¶ 65, 19 ¶ 66, 26 ¶¶ 107-

08, 31 ¶ 131, 38 ¶ 163]; see also [Doc. 19-1 at 5 ¶¶ 216-17, 15 ¶¶ 265-66, 21 ¶ 294; Doc.

19-2 at 4 ¶¶ 380-81, 17 ¶¶ 439-40; Doc. 19-3 at 2 ¶¶ 543-44, 32 ¶¶ 678-79; Doc. 19-4

at 17 ¶ 777, 34 ¶¶ 849-50; Doc. 19-5 at 4 ¶¶ 894-95, 15 ¶¶ 949-50, 21 ¶ 979; Doc. 19-6

at 2 ¶ 1052, 13 ¶¶ 1100-01, 17 ¶ 1122; Doc. 19-7 at 2 ¶¶ 1189-90, 14 ¶¶ 1247-48, 20 ¶

1278; Doc. 19-8 at 1 ¶¶ 1331-32, 12 ¶¶ 1381-82, 17-18 ¶¶ 1410-11].  She claims she

---

[4] In addition, Phillips alleges that defendant Cage, a black female, "yelled negative comments at [her] as a result of [her] age and attire that included, 'you're just too old!', 'you're too old for a dress,' 'there you go all old and wearing them heels!'"  [Doc. 19-3 at 11 ¶ 587]; see also [Doc. 19 at 7 ¶ 14; Doc. 19-4 at 11 ¶ 751]. Phillips also alleges that in March 2013, Cage "falsely accuse[d] [her] of sexually harassing her because [Phillips] kept a mirror on her desk so that [she] could see who was approaching her from behind."  [Doc. 19 at 23 ¶ 93]; see also [Doc. 19-1 at 11 ¶ 246; Doc. 19-2 at 12 ¶ 422; Doc. 19-3 at 12 ¶ 591; Doc. 19-4 at 12 ¶ 756; Doc. 19-5 at 10 ¶ 929; Doc. 19-7 at 9 ¶ 1225; Doc. 19-8 at 7 ¶ 1362].  She asserts that as a result of Cage's accusations, she was "presumed to be a sexually deviant individual by many civilian and certified employees of the [APD]."  [Doc. 19 at 24 ¶ 95]; see also [Doc. 19-1 at 11 ¶ 248; Doc. 19-2 at 13 ¶ 424; Doc. 19-3 at 12 ¶ 593; Doc. 19-4 at 13 ¶ 758; Doc. 19-5 at 11 ¶ 931; Doc. 19-7 at 9 ¶ 1227; Doc. 19-8 at 8 ¶ 1364].  She also alleges that Cage has made threats against her and informed other employees that Phillips was "crazy" and "was going to shoot up the office."  [Doc. 19 at 24 ¶¶ 97-98 (internal marks omitted)]; see also [Doc. 19-1 at 11 ¶ 250, 12 ¶ 251; Doc. 19-2 at 13 ¶¶ 426-27; Doc. 19-3 at 12 ¶ 595, 13 ¶ 596; Doc. 19-4 at 13 ¶¶ 760-61; Doc. 19-5 at 11 ¶¶ 933-34; Doc. 19-7 at 10 ¶¶ 1229-30; Doc. 19-8 at 8 ¶¶ 1366-67].

was "forced to furnish her own lighting by way of a personal lamp," that her actual workspace was "extremely limited," that she was "subjected to extreme isolation from other employees and members of the public," and that "no Caucasian employees who are similarly situation [sic] to [her] such as C. Traugott, Robert Moss and Edward [Young], and others to be named during the course of this action, were not subject to working in an Interrogation Room" or other "negative treatment" that she received.  [Doc. 19 at 19 ¶¶ 67-70, 27 ¶¶ 109-10, 31-32 ¶ 132, 34-35 ¶ 149, 39 ¶ 169]; see also [id. at 22 ¶ 87, 25 ¶ 103, 30 ¶ 125, 31 ¶ 130, 38 ¶¶ 162, 164; Doc. 19-1 at 5-6 ¶¶ 218-20, 15 ¶¶ 267-68, 21 ¶ 295; Doc. 19-2 at 4 ¶¶ 382-84, 17 ¶¶ 441-42, 23 ¶ 469; Doc. 19-3 at 2-3 ¶¶ 545-50, 17 ¶¶ 613-14, 24 ¶ 641, 32 ¶ 680; Doc. 19-4 at 6 ¶ 733, 18 ¶¶ 778-79, 25 ¶ 811, 34 ¶ 851; Doc. 19-5 at 4 ¶¶ 896-98, 15 ¶¶ 951-52, 21 ¶ 980; Doc. 19-6 at 2 ¶ 1053, 13 ¶ 1102, 14 ¶ 1103, 17 ¶ 1123; Doc. 19-7 at 3 ¶¶ 1191-93, 14 ¶¶ 1249-50, 20 ¶ 1279; Doc. 19-8 at 2 ¶¶ 1333-35, 12 ¶¶ 1383-84, 18 ¶ 1412].  She further alleges that defendants Bristrow, James, Cain, and Acevedo, all of whom are black and were assigned to the ID Unit, would yell at her, call her names, complain about the decorations and photos on her desk, would approach her and demand that she explain what she was doing at work, cursed at her, and "tamper[ed]" with her workspace by placing a garbage can in her area that "produced a repugnant order [sic]."  [Doc. 19 at 7 ¶ 15, 8 ¶¶ 16-17, 9 ¶ 18, 20 ¶¶ 73-77, 21 ¶¶ 78-83]; see also

[Doc. 19-1 at 6-7 ¶¶ 222-31, 8 ¶¶ 232-33; Doc. 19-2 at 5-6 ¶¶ 386-96; Doc. 19-3 at 3-4 ¶¶ 552-60, 5 ¶¶ 561-62; Doc. 19-4 at 2-3 ¶¶ 715-20, 4 ¶¶ 721-25; Doc. 19-5 at 4-5 ¶¶ 900-05, 6 ¶¶ 906-10; Doc. 19-7 at 3-4 ¶¶ 1195-1202, 5 ¶¶ 1203-05; Doc. 19-8 at 2-3 ¶¶ 1337-44, 4 ¶¶ 1345-47].[5] Phillips asserts that she complained about these actions, as well as the actions of Cage, to her immediate supervisors, defendants Love and Lee, both of whom are also black,[6] as well as to defendants Gibbs, Commanding Major of the ID Unit who is white; Spillane, Deputy Chief of Police of the APD, who also is white; and Turner, Chief of Police of the APD, who is black, but that none of them took any action.  [Doc. 19 at 4 ¶¶ 9-10, 5 ¶¶ 11-12, 6 ¶ 13, 22 ¶¶ 84-85, 25 ¶¶ 100-01,

---

[5] Phillips also alleges that "[d]efendants [] ridiculed [her] for wearing dresses and business attire to work by way of yelling at [her] that 'you're too old to be wearing dresses and walking around in heels like that!'"  [Doc. 19-3 at 5 ¶ 564; Doc. 19-4 at 4-5 ¶ 727].

[6] Phillips also alleges that defendant Lee issued her performance evaluations during the 2013 and 2014 years that "contained unexplained and unsubstantiated deductions from [her] performance evaluations," [Doc. 19 at 27 ¶ 114], see also [Doc. 19-1 at 16 ¶ 272; Doc. 19-2 at 18 ¶ 446; Doc. 19-3 at 18 ¶ 619; Doc. 19-4 at 19 ¶ 784; Doc. 19-5 at 16 ¶ 956; Doc. 19-7 at 15 ¶ 1254; Doc. 19-8 at 13 ¶ 1388], but that she spoke to Love, who then revised her evaluations to remove the negative remarks, [Doc. 19-1 at 16 ¶ 273; Doc. 19-2 at 18 ¶ 447; Doc. 19-3 at 18 ¶ 620; Doc. 19-4 at 19 ¶ 785; Doc. 19-5 at 16 ¶ 957; Doc. 19-7 at 15 ¶ 1254; Doc. 19-8 at 13 ¶ 1389].  She further alleges that defendant Love would make remarks about Phillips' attire and the way she walked, [Doc. 19 at 28 ¶ 116], see also [Doc. 19-1 at 16 ¶ 274; Doc. 19-2 at 18 ¶ 448; Doc. 19-3 at 18 ¶ 621; Doc. 19-4 at 19 ¶ 786; Doc. 19-5 at 16 ¶ 958; Doc. 19-7 at 15 ¶ 1256; Doc. 19-8 at 13 ¶ 1390], and that both Lee and Love remarked that she "'was too old for a dress' and that [she], 'should be cold because she wore a dress,'" [Doc. 19-3 at 18 ¶ 622]; see also [Doc. 19-4 at 19 ¶ 787].

27 ¶¶ 112-13, 31 ¶ 128, 32 ¶¶ 134-35, 36 ¶ 155, 37 ¶¶ 157, 160, 39 ¶ 166, 44-46 ¶¶ 182-87]; see also [Doc. 19-1 at 8 ¶ 235, 9 ¶ 237, 12 ¶¶ 253-54, 13 ¶¶ 257, 259, 16 ¶¶ 270-71, 18-19 ¶ 284, 20 ¶ 291, 22 ¶¶ 297-98, 26 ¶¶ 317, 319, 29 ¶ 329, 36-38 ¶¶ 353-60; Doc. 19-2 at 7 ¶¶ 398-99, 401, 8 ¶ 403, 10 ¶ 411, 12 ¶ 420, 14-15 ¶¶ 429-30, 433, 435, 17 ¶ 444, 18 ¶ 445, 20 ¶ 458, 21 ¶ 460, 23 ¶¶ 471-72, 27-28 ¶¶ 490, 492, 30 ¶¶ 502-04, 31 ¶ 508, 35 ¶¶ 523-24, 36-37 ¶¶ 525-29; Doc. 19-3 at 5 ¶ 565, 6-7 ¶¶ 566, 568, 570, 13 ¶¶ 599-600, 14 ¶ 603, 15 ¶ 605, 17 ¶ 616, 18 ¶ 618, 21 ¶ 630, 22 ¶ 632, 24 ¶¶ 643-44, 28-29 ¶¶ 664, 666, 31 ¶ 676, 37-38 ¶¶ 697-702, 39 ¶ 703; Doc. 19-4 at 5-6 ¶¶ 728-29, 731, 9 ¶ 745, 14 ¶¶ 764-65, 15-16 ¶¶ 768, 770, 18 ¶¶ 781, 783, 22 ¶¶ 799, 801, 26 ¶¶ 813-14, 30 ¶ 835, 31 ¶ 837, 33 ¶ 847, 38-40 ¶¶ 865-71; Doc. 19-5 at 6-8 ¶¶ 912-13, 915, 917, 11-12 ¶¶ 936-37, 940, 13 ¶ 942, 15 ¶ 954, 16 ¶ 955, 18 ¶ 968, 19 ¶ 970, 21-22 ¶¶ 982-83, 28-29 ¶¶ 1012-14, 35 ¶ 1036, 36-38 ¶¶ 1037-42; Doc. 19-6 at 14 ¶¶ 1105-06, 18 ¶¶ 1125-26; Doc. 19-7 at 5 ¶¶ 1207-08, 6 ¶¶ 1210, 1212, 10 ¶ 1232, 11 ¶ 1233, 14 ¶¶ 1252-53, 17 ¶ 1266, 20-21 ¶¶ 1281-82, 29 ¶¶ 1315-16, 30-31 ¶¶ 1317-21; Doc. 19-8 at 4 ¶¶ 1349-50, 5 ¶¶ 1352, 1354, 9 ¶¶ 1369-70, 10 ¶¶ 1373, 1375, 12 ¶ 1386, 13 ¶ 1387, 15 ¶¶ 1399, 1401].

In July 2014, Phillips alleges that defendants Lee and Love escorted her to, and participated in, a meeting with Gibbs, during which Gibbs confronted Phillips about unspecified complaints against her co-workers that she had recently made.  [Doc.

19 at 28 ¶ 117, 32 ¶ 136]; <u>see also</u> [Doc. 19-1 at 17 ¶ 275, 22 ¶ 299; Doc. 19-2 at 18 ¶ 449, 24 ¶ 473; Doc. 19-3 at 19 ¶ 622, 25 ¶ 646; Doc. 19-4 at 20 ¶ 789, 26 ¶ 816; Doc. 19-5 at 16 ¶ 959, 22 ¶ 984; Doc. 19-6 at 2-3 ¶ 1056, 14 ¶ 1107, 18 ¶ 1127; Doc. 19-7 at 15 ¶ 1257, 21 ¶ 1283; Doc. 19-8 at 13 ¶ 1391, 19 ¶ 1416].  Phillips alleges that Lee, Love, and Gibbs prevented her from leaving the meeting and told her she could not leave until she "recanted all of the complaints that [she] had made regarding the negative treatment that she sustained during the course of her employment with [the City]," and that Gibbs yelled at her and told her that while she was a good employee, she was not worth the trouble because she was a problem wherever she went.  [Doc. 19 at 28-29 ¶ 118, 33 ¶¶ 137-39]; <u>see also</u> [Doc. 19-1 at 17 ¶ 276, 22 ¶¶ 300-02; Doc. 19-2 at 19 ¶ 450, 24 ¶¶ 474-76; Doc. 19-3 at 19 ¶ 623, 25 ¶¶ 647-49; Doc. 19-4 at 20 ¶ 790, 26 ¶ 817, 27 ¶¶ 818-19; Doc. 19-5 at 17 ¶ 960, 22 ¶¶ 985-87; Doc. 19-6 at 3 ¶¶ 1057-59, 14-15 ¶ 1108, 18 ¶¶ 1128-30; Doc. 19-7 at 15-16 ¶ 1258, 21 ¶¶ 1284-86; Doc. 19-8 at 14 ¶ 1392, 19 ¶¶ 1417-19].  She then asserts that she collapsed on the floor during this meeting and was unable to breathe and that defendants Love and Lee called for emergency medical services ("EMS"), but that Gibbs refused to allow EMS to see Phillips until after she was seen by a doctor with the Behavioral Services Unit of the APD.  [Doc. 19 at 29 ¶¶ 119, 121-22, 33 ¶¶ 140-43, 34 ¶ 144]; <u>see also</u> [Doc. 19-1 at 17-18 ¶¶ 277-80, 23 ¶¶ 303-308; Doc. 19-2 at 19 ¶¶ 451-54, 24-25 ¶¶ 477-82; Doc. 19-3 at

20 ¶¶ 624-27, 25 ¶ 650, 26 ¶¶ 651-55; Doc. 19-4 at 20 ¶¶ 791-92, 21 ¶¶ 793-94, 27-28

¶¶ 820-25; Doc. 19-5 at 17 ¶¶ 961-64, 22 ¶ 988, 23 ¶¶ 989-93; Doc. 19-6 at 3 ¶¶ 1060-

62, 4 ¶¶ 1063-65, 15 ¶¶ 1109-13, 16 ¶ 1117, 19 ¶¶ 1131-36; Doc. 19-7 at 16 ¶¶ 1260-63,

21 ¶ 1287, 22 ¶¶ 1288-92; Doc. 19-8 at 14 ¶¶ 1393-96, 19-20 ¶¶ 1420-25].   After

Phillips was seen by a doctor with Behavioral Services, Gibbs permitted EMS to treat

Phillips and she was subsequently transported to the hospital.  [Doc. 19 at 34 ¶¶ 145-

46]; see also [Doc. 19-1 at 24 ¶ 309; Doc. 19-2 at 25 ¶ 483; Doc. 19-3 at 26 ¶ 656; Doc.

19-4 at 28 ¶ 826; Doc. 19-5 at 23 ¶ 994; Doc. 19-6 at 4 ¶ 1066, 20 ¶ 1137; Doc. 19-7 at

22 ¶ 1293; Doc. 19-8 at 20 ¶ 1426].[7]  On July 16, 2014, Phillips was placed on paid

administrative leave, [Doc. 19 at 16 ¶ 53, 34 ¶ 147], and in February 2015, the City's

Human Resources Department contacted Phillips about returning to work on the

Morning Watch, [id. at 16 ¶¶ 54-55].

Based on these allegations, Phillips asserts the following thirteen claims: (1)

§ 1981 race discrimination claim against all defendants,[8] (2) Title VII retaliation "due

---

[7] Phillips alleges that defendants Spillane and Turner were aware of the July 2014 incident involving Gibbs, but that they "failed to correct and prevent the acts[.]"  [Doc. 19 at 39 ¶¶ 167-68]; see also [Doc. 19-1 at 30-31 ¶¶ 336-37; Doc. 19-2 at 32 ¶¶ 509-10; Doc. 19-3 at 33 ¶¶ 683-84; Doc. 19-4 at 35 ¶¶ 854-55; Doc. 19-5 at 30 ¶¶ 1019-20; Doc. 19-6 at 23 ¶¶ 1154-55, 24 ¶¶ 1157-59].

[8] Phillips alleges that she is "claiming that all defendants have discriminated against [her] on the basis of her race, ethnicity, and color in the performance of her employment contract, and in the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship," [Doc. 19 at 17 ¶ 57], and that the City

to prior allegation of sexual harassment against government/municipal defendant,"[9]

(3) hostile work environment claim against "government/municipal defendant,"[10]

(4) age discrimination in violation of the ADEA against the City,[11] (5) violation of the

Equal Protection Clause of the Fourteenth Amendment against all defendants, (6)

violation of Georgia's Whistleblower Act "against government/municipal

defendant," (7) false arrest against defendants Gibbs, Spillane, Turner, and the City,

(8) false imprisonment against defendants Love, Lee, Gibbs, Spillane, Turner, and

---

discriminated against her based "on her status as an African-American person who has a history of reporting violations" and that "[b]ut for [her] race as an African-American person, [she] would not have endured the negative treatment from [d]efendants[.]" [Id. at 36 ¶¶ 153-54].

[9] Phillips alleges that she is "asserting claims of discrimination on the basis of retaliation for having made prior complaints of discrimination and harassment against [d]efendants[.]" [Doc. 19-1 at 1 ¶ 196]. She further asserts that "[b]ut for [her] race as an African-American person and sex as a female and history of engaging in protected activity which includes complaining against being subjected to acts of discrimination and sexual harassment, [she] would not have endured the negative treatment from [d]efendants[.]" [Id. at 27 ¶ 323].

[10] Phillips alleges that she is "eligible to pursue her claim of hostile work environment against [the City] due to her status as a female her status as African-American person, being over the age of forty (40) at the time the allegations in this claim occurred and having a history of engaging in protected activity by complaining to her employer of that she has been subjected to acts of harassment, mistreatment and discrimination by employees of [the City's APD]." [Doc. 19-2 at 1-2 ¶ 366].

[11] Phillips alleges that she is over the age of 40 and is "one of the eldest of the employees who were employed at [the City's APD]." [Doc. 19-3 at 1 ¶ 537].

the City, (9) negligent hiring, retention, and supervision against defendants Lee, Love, Gibbs, and the "government/municipal defendant," (10) intentional and negligent infliction of emotional distress against all defendants, (11) "state law attorney's fees," (12) "punitive damages under state law," and (13) "attorney's fees pursuant to 42 U.S.C. § 1988." See [Doc. 19; Docs. 19-1 through 19-8 (all caps omitted)]. With respect to each claim, she repeats her allegations against each defendant under separate subsections. See [Doc. 19; Docs. 19-1 through 19-8].

Phillips asserts that she filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), [Doc. 19 at 2 ¶ 3], and received a notice of her right to sue dated July 1, 2015, [id.].[12]  In the supplemental charge letter filed with the EEOC on February 23, 2015, Phillips alleges that she was placed on paid administrative leave on July 16, 2014, and that on January 28, 2015, she was advised "via text message that efforts were being made to place [her] in an Evening

_____

[12] Phillips filed a previous lawsuit against the City and other individuals not named in the instant first amended complaint that centers around nearly identical allegations of harassment by various actors. See Phillips v. City of Atlanta, Civil Action No. 1:14-cv-00680, at [Docs. 1 & 16] (N.D. Ga. 2014) (hereinafter referred to as "Phillips I"). In Phillips I, the Court dismissed Phillips' claim for Title VII hostile work environment sexual harassment for failure to exhaust administrative remedies, see id., at [Docs. 19 & 24], and on February 23, 2015, Phillips sought a stay of Phillips I pending her receipt of a right-to-sue letter on her second charge of discrimination filed with the EEOC, id., at [Doc. 28]. After a hearing, the Court denied Phillips motion to stay on March 20, 2015, see id., at [Doc. 31], and she then filed the instant action on October 13, 2015, following her receipt of her right-to-sue letter, see [Doc. 1].

Watch shift position." [Doc. 24-1 at 14].  She then recounts the alleged harassment she suffered that "initially began in 2002," [id. at 14-15], and described the incident that occurred on July 16, 2014, that led to her being placed on paid administrative leave, [id. at 15-17].  Based on these allegations:

> Phillips is seeking relief as to [her] claims of Age Discrimination under the ADEA because she is over the age of forty (40). . . . Phillips is also asserting charges of Retaliation and Hostile Work Environment as a result of the pattern of harassment and intimidation due to [her] pending litigation against the City of Atlanta for sexual harassment, sex based employment discrimination, hostile work environment and retaliation.

[Id. at 17].[13]

Phillips filed the instant action on October 13, 2015, [Doc. 1], and, with leave of Court, see [Doc. 18], she then filed her first amended complaint on January 22, 2016, [Doc. 19].  Defendants move to dismiss Phillips' first amended complaint in its entirety,[14] [Doc. 22], which Phillips opposes, [Doc. 24].  Defendants have filed a

---

[13] Although Phillips claimed that her "pending litigation" was for "sexual harassment, sex based employment discrimination, hostile work environment and retaliation," [Doc. 24-1 at 17], Phillips was well aware that the only remaining claims in Phillips I at the time she filed this supplemental charge with the EEOC were her claims for Title VII retaliation against the City and intentional infliction of emotional distress against the named individual defendants, see Phillips I, at [Docs. 19 & 24].

[14] In the alternative, defendants move for a more definite statement.  See [Doc. 22 at 1].  Because this Report and Recommendation recommends that defendants' motion to dismiss be granted, it is **RECOMMENDED** that defendants' alternative motion for a more definite statement be **DENIED AS MOOT.**  See Bowdish v. Regions Bank (Dahlonega), Civil Action No. 2:11-CV-00259-RWS, 2012 WL 2018134,

reply in support of their motion to dismiss, [Doc. 26], and the pending motion, [Doc. 22], having been fully briefed, is now ripe for ruling.

## II.  STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of an action when the complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the Court must accept Phillips' allegations as true and construe the complaint in her favor.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Duke v. Cleland, 5 F.3d 1399, 1402 (11th Cir. 1993) (citation omitted); Tapsoba v. Khiani Alpharetta, LLC, Civil Action No. 1:13–CV–1519–RWS, 2013 WL 4855255, at *1 (N.D. Ga. Sept. 11, 2013) (citations omitted).  "However, the court need not 'accept as true a legal conclusion couched as a factual allegation.'"  Smith v. Delta Air Lines, Inc., 422 F. Supp. 2d 1310, 1324 (N.D. Ga. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [Phillips'] obligation to provide the grounds of [her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (last alteration in original) (citations and internal marks omitted).

at *7 (N.D. Ga. June 5, 2012); Hennington v. Bank of Am., No. 1:10-cv-1350-WSD, 2011 WL 705173, at *5 & n.7 (N.D. Ga. Feb. 18, 2011).

"Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Broner v. Wash. Mut. Bank, FA, 258 F. App'x 254, 256 (11th Cir. 2007) (per curiam) (unpublished) (quoting Fed. R. Civ. P. 8(a)(2)). "Factual allegations must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555 (footnote and citation omitted), as the complaint must contain "enough facts to state a claim to relief that is plausible on its face," id. at 570. "A claim has facial plausibility when [Phillips] pleads factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). The Supreme Court in Iqbal held:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not "show[n]"–"that the pleader is entitled to relief."

Id. at 678-79 (last alteration in original) (citations omitted). "Regardless of the alleged facts, however, a court may dismiss a complaint on a dispositive issue of

16

law." <u>Moore v. McCalla Raymer, LLC</u>, 916 F. Supp. 2d 1332, 1342 (N.D. Ga. 2013), adopted at 1336 (citations and internal marks omitted); <u>see also</u> <u>Glover v. Liggett Grp., Inc.</u>, 459 F.3d 1304, 1308 (11th Cir. 2006) (per curiam) (citation omitted); <u>Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993) (citations omitted).

## III.  DISCUSSION

Defendants make several arguments in support of their motion to dismiss, [Doc. 22], which Phillips opposes, [Doc. 24].  First, defendants contend that Phillips' first amended complaint is subject to dismissal as a shotgun complaint.  [Doc. 22 at 6].  Defendants also assert that Phillips' Title VII retaliation and ADEA discrimination claims asserted in Counts Two and Four are foreclosed because she failed to timely file her complaint following the issuance of her EEOC right-to-sue letter, [<u>id.</u> at 10-11], and that even if she has timely filed these claims, she fails to state a plausible claim for relief, [<u>id.</u> at 12-14, 18-19].  They further contend that Phillips fails to allege sufficient facts to support her claims of § 1981 race discrimination, hostile work environment, and the denial of equal protection under § 1983.[15]  [<u>Id.</u> at 11-12, 14-20].  Lastly, defendants argue that Phillips' state law claims

---

[15] "No substantive rights are created by Section 1983; it merely provides a remedy for deprivations of federal rights created elsewhere." <u>Sanders-Alloway v. Mabry</u>, No. 2:06-cv-0419-MEF, 2008 WL 552648, at *3 (M.D. Ala. Feb. 27, 2008), adopted at *1 (citing <u>Wideman v. Shallowford Cmty. Hosp., Inc.</u>, 826 F.2d 1030, 1032

fail as a matter of law.   [Id. at 20-25].   The Court will address each of these arguments.

## A.   Shotgun Complaint

Defendants argue that Phillips' first amended complaint is a "shotgun complaint that contains repetitive factual allegations, factual allegations that are irrelevant to the claims they are plead under, and multiple causes of action under the same claim."   [Doc. 22 at 6].   In support of their argument, defendants cite Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313 (11th Cir. 2015), in which the Eleventh Circuit identified four "rough types or categories of shotgun pleadings" as follows:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief. Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another,

(11th Cir. 1987)).

and in one way or another, to give the defendants adequate notice of
the claims against them and the grounds upon which each claim rests.

Id. at 1322-23 (footnotes omitted); see also Yeyille v. Miami Dade Cty. Pub. Sch., No.

15–13053, 2016 WL 692050, at *1 (11th Cir. Feb. 22, 2016) (per curiam) (unpublished)

(citation omitted).

Defendants specifically point out that Phillips' first amended complaint is

"severed into multiple documents containing largely identical allegations," that

"[u]nder claims asserted against the City, [she] incorporates, in gross, allegations

against other [d]efendants that do not relate to each applicable count," that it

"contains references to other causes of action under individual causes of action," and

that it "lists claims under different statutes and causes of action under the same

count," and they therefore contend that her first amended complaint should be

dismissed as a shotgun pleading.  [Doc. 22 at 9-10 (footnote omitted)].

"A complaint that fails to articulate claims with sufficient clarity to allow []

defendant[s] to frame a responsive pleading constitutes a 'shotgun pleading.'"

Lampkin-Asam v. Volusia Cty. Sch. Bd., 261 F. App'x 274, 277 (11th Cir. 2008) (per

curiam) (unpublished) (citation omitted); see also Schowalter v. Ridge, Civil Action

No. 1:08-cv-0264-JOF, 2009 WL 812279, at *6 (N.D. Ga. Mar. 27, 2009) (noting that an

example of a shotgun pleading is where a plaintiff "makes no effort to match specific

defendants and specific facts with each cause of action").  The Eleventh Circuit "has

addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay."  Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) (citing Byrne v. Nezhat, 261 F.3d 1075, 1128-34 (11th Cir. 2001), abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc., 657 F.3d 1146, 1151 (11th Cir. 2011); Magluta v. Samples, 256 F.3d, 1282, 1284-85 (11th Cir. 2001) (per curiam); Anderson v. Dist. Bd. of Trs. of Cent. Fl. Cmty. Coll., 77 F.3d 364, 366 (11th Cir. 1996)).  "[S]hotgun [] pleadings . . . impede the orderly, efficient, and economic disposition of disputes," Ebrahimi v. City of Huntsville Bd. of Educ., 114 F.3d 162, 165 (11th Cir. 1997) (per curiam) (citations omitted), and detract from a court's ability to effectively manage litigation and administer justice, Byrne, 261 F.3d at 1131.

Phillips' first amended complaint is "in no sense the 'short and plain statement of the claim' required by Rule 8 of the Federal Rules of Civil Procedure," Magluta, 256 F.3d at 1284 (citation omitted), but instead consists of one main document and eight separate attachments for a total of 1,475 paragraphs of repetitious factual allegations that "force the [] [C]ourt [to] sift through the facts presented and decide for [itself] which [a]re material to the particular cause of action asserted," Strategic Income Fund, L.L.C., 305 F.3d 1295 n.9 (third and fourth alterations in original) (citation and internal marks omitted); see also Carvel v.

20

Godley, 404 F. App'x 359, 361 (11th Cir. 2010) (per curiam) (unpublished).  Indeed,

each of Phillips' counts essentially repeats allegations made in the preceding counts,

which results in each count being "replete with factual allegations that could not

possibly be material to that specific count, and . . . [where] any allegations that are

material are buried beneath innumerable pages of [] irrelevancies," Magluta, 256

F.3d at 1284, making it exceedingly "difficult for [defendants] to meaningfully

respond to [Phillips'] assertions[,]" Butticaz v. JPMorgan Chase, Nat'l Ass'n, Civil

Action No. 1:11-CV-2483-RWS, 2011 WL 6296589, at *2 (N.D. Ga. Dec. 15, 2011).

While the first amended complaint may "not neatly fit under [the shotgun pleading]

rubric," Andela v. Univ. of Miami, 692 F. Supp. 2d 1356, 1370 (S.D. Fla. 2010), aff'd

in part, 461 F. App'x 832 (11th Cir. 2012) (per curiam) (unpublished), the lengthy and

repetitious pleading including irrelevant allegations to the particular claims asserted

renders it a "'shotgun' pleading of the sort [the Eleventh Circuit] has been roundly,

repeatedly, and consistently condemning for years," Popham v. Cobb Cty., Civil

Action File No. 1:09–CV–1477–BBM, 2009 WL 2425954, at *2 (N.D. Ga. Aug. 5, 2009)

(citation omitted).

        In short, Phillips' first amended complaint is an "impermissible 'shot gun'

complaint, [which fails] to comply with Rul[e 8 of the] Federal Rules of Civil

Procedure," Roundtree v. Countrywide Home Loans, Inc., No. 3:09-cv-189-J-32TEM,

2009 WL 5215334, at *4 (M.D. Fla. Dec. 29, 2009), and to which defendants are "not expected to frame a responsive pleading," <u>McWhorter v. Miller, Einhouse, Rymer & Boyd, Inc.</u>, No. 6:08-cv-1978-Orl-31KRS, 2009 WL 92846, at *2 (M.D. Fla. Jan. 14, 2009); <u>see also</u> <u>Beckwith v. Bellsouth Telecomms. Inc.</u>, 146 F. App'x 368, 371 (11th Cir. 2005) (per curiam) (unpublished) (citation omitted). Because Phillips' first amended complaint is an impermissible shotgun pleading, it is subject to dismissal on that basis alone.[16] However, since the defendants have also argued that Phillips' first amended complaint fails to state any plausible claims for relief, the Court "deems it proper to [also] review [defendants'] [m]otion[] [to dismiss] on the merits[.]" <u>Andela</u>, 692 F. Supp. 2d at 1370-71.

---

[16] In her response to the motion to dismiss, Phillips asserts that any deficiency with respect to her first amended complaint can be cured by amendment. [Doc. 24 at 6]. However, Phillips has already been granted the opportunity to amend her complaint after defendant Cage moved to dismiss her original complaint, <u>see</u> [Doc. 6], and the other defendants moved for a more definite statement, <u>see</u> [Doc. 14]. Thus, a further opportunity for amendment is not warranted, <u>see</u> <u>Nurse v. Sheraton Atlanta Hotel</u>, 618 F. App'x 987, 990-91 (11th Cir. 2015) (per curiam) (unpublished) (affirming the district court's dismissal with prejudice of plaintiff's amended complaint, which failed to cure the deficiencies of his original complaint and still constituted a shotgun pleading, noting that it was "hard-pressed to see how allowing [plaintiff] to amend his complaint a third time would have yielded a more intelligible pleading"), nor has Phillips properly sought to amend her complaint again, <u>see</u> <u>Lord Abbett Mun. Income Fund, Inc. v. Tyson</u>, 671 F.3d 1203, 1208 (11th Cir. 2012) (per curiam) (finding no error where district court dismissed plaintiff's complaint without granting it leave to amend where the request for leave to amend appeared in its response to defendants' motion to dismiss).

**B.**     **Timeliness of Phillips' Title VII and ADEA Claims**

A plaintiff proceeding under the ADEA or Title VII must file a civil action in the appropriate district court within 90 days of receiving a right-to-sue letter from the EEOC.  42 U.S.C. § 2000e-5(f)(1); Marshal v. City Sch. Bd., Civil Action No. 08-0464-KD-B, 2008 WL 5188804, at *3 (S.D. Ala. Dec. 10, 2008), adopted at *2 (citations omitted); see also Santini v. Cleveland Clinic Fla., 232 F.3d 823, 825 (11th Cir. 2000) (per curiam) (footnote and citation omitted) ("Title VII and ADEA actions may not be brought more than 90 days after a complainant has adequate notice that the EEOC has dismissed the Charge."); White v. Ga. Dep't of Motor Vehicle Safety, Civil Action File No. 1:06-CV-0124-TWT, 2006 WL 1466254, at *2 (N.D. Ga. May 19, 2006), adopted at *1 (citations omitted).  The limitations period commences upon the plaintiff's receipt of the right-to-sue letter. Stallworth v. Wells Fargo Armored Servs. Corp., 936 F.2d 522, 524 (11th Cir. 1991); Norris v. Fla. Dep't of Health & Rehab. Servs., 730 F.2d 682 (11th Cir. 1984) (per curiam) (citations omitted); Chapman v. Travalco, U.S.A., Inc., 973 F. Supp. 1045, 1046 (S.D. Fla. 1997) (citations omitted) ("Claimants are required to file their Title VII and ADEA actions within 90 days of receipt of a Notice of Right to Sue from the EEOC.").  Once a defendant contests the timeliness of a complaint, the plaintiff has the burden of establishing that she met the 90-day filing requirement. See Jackson v. Seaboard Coast Line R.R., 678 F.2d 992,

23

1010 (11th Cir. 1982) (citations omitted); <u>White</u>, 2006 WL 1466254, at *2 (citation omitted).

Defendants have contested the timeliness of Phillips' complaint with respect to her Title VII and ADEA claims, arguing that she filed this action more than 90 days from the date the EEOC issued the right-to-sue letter.  [Doc. 22 at 10-11].  In particular, defendants point out that Phillips alleges that the letter was dated July 1, 2015, but that she did not file the present action until October 13, 2015, which was 104 days after the letter was issued.  [<u>Id.</u>].  In Title VII and ADEA cases "in which the date of receipt of the EEOC's right-to-sue letter is either disputed or cannot be established, Rule 6 of the Federal Rules of Civil Procedure creates a presumption that it was received by the plaintiff three days after it was issued by the EEOC." <u>Mobley v. Chatham Cty.</u>, No. CV408-221, 2009 WL 1360413, at *1 (S.D. Ga. May 14, 2009) (citations omitted); <u>see also</u> <u>Baldwin Cty. Welcome Ctr. v. Brown</u>, 466 U.S. 147, 148 & n.1 (1984) (per curiam) (citing Fed. R. Civ. P. 6(e)).  Here, however, Phillips maintains that she actually received the right-to-sue letter on July 15, 2015, after it was initially sent to Phillips' counsel's former office address, but then forwarded to her current office address.  <u>See</u> [Doc. 24 at 2, 9-10; Doc. 24-2 at 2].  Accepting that Phillips received the letter on July 15, 2015, her filing of the initial complaint in this case on October 13, 2015, is within the 90-day limitations period.  Accordingly,

24

"[b]ecause the complaint was filed within 90 days of its receipt," the Court rejects defendants' arguments and finds that the claims at issue are timely.  <u>Weatherby v. Fulton Cty. Sch. Sys.</u>, Civil Action No. 1:11–cv–04578–JEC, 2013 WL 5350813, at *4 (N.D. Ga. Sept. 23, 2013).

## C.    <u>Section 1981 Claims</u>

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts[17] . . . as is enjoyed by white citizens[.]"  42 U.S.C. § 1981(a) (footnote added).  "Thus, § 1981 provides a cause of action for race-based employment discrimination including wrongful termination, retaliation, and a racially hostile work environment."  <u>Melton v. Nat'l Dairy LLC</u>, 705 F. Supp. 2d 1303, 1315 (M.D. Ala. 2010).  Where § 1981 is used as a remedy for employment discrimination, the elements required to establish a claim under § 1981 mirror those required for a Title VII claim.  <u>Howard v. BP Oil Co.</u>, 32 F.3d 520, 524 n.2 (11th Cir. 1994) (citation omitted); <u>Brown v. Am. Honda Motor Co.</u>, 939 F.2d 946, 949 (11th Cir. 1991) (citation omitted); <u>see also</u> <u>Alford v. Martin & Gass, Inc.</u>, 391 F. App'x 296, 302 (4th Cir. 2010) (per curiam) (unpublished) (citation omitted) ("[T]he elements of a hostile work environment claim are the same under

---

[17] "Make and enforce contracts" encompasses "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

Title VII and § 1981."); <u>Hale v. Mingledorff</u>, Civil Action No. 2:13-CV-0228-RWS, 2014 WL 7012772, at *11 (N.D. Ga. Dec. 11, 2014), adopted at *1 (citation and internal marks omitted) ("The analysis of a disparate treatment claim is the same whether that claim is brought under Title VII [or] § 1981[.]").

### 1.    *Disparate Treatment Claim*

In Count One of her first amended complaint, Phillips asserts a claim for race discrimination in violation of § 1981 against all of the defendants.  [Doc. 19 at 16-48 ¶¶ 56-193].  Defendants argue that Phillips' § 1981 race discrimination claim should be dismissed for failure to allege sufficient facts to support such a claim.  [Doc. 22 at 11-12; Doc. 26 at 5-6].   Phillips replies that she has "satisfied the pleading requirements as stated under . . . § 1981," by pleading that she "has been subjected to multiple acts of discriminatory treatment [that] were not experienced by various Caucasian or white comparators, including C. Tagott, Robert Moss and Edward Young" and that she has been "subjected to the discriminatory treatment and harassment because of her history of reporting violations of the pol[i]cies and procedures of the [APD]."  [Doc. 24 at 11-12 (citations omitted)].

To establish a prima facie case of race discrimination under § 1981, Phillips must show that: "1) [s]he is a member of a protected class; 2) [s]he was qualified for the position; 3) [s]he suffered an adverse employment action; and 4) [s]he was

replaced by someone outside [her] protected class or 'was treated less favorably than a similarly-situated individual outside [her] protected class.'" DeLeon v. ST Mobile Aerospace Eng'g, Inc., 684 F. Supp. 2d 1301, 1327 (S.D. Ala. 2010) (quoting Maynard v. Bd. of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003)).  However, "[a] complaint in an employment discrimination case need not contain specific facts establishing a *prima facie* case under the evidentiary framework for such cases to survive a motion to dismiss." Henderson v. JP Morgan Chase Bank, N.A., 436 F. App'x 935, 937 (11th Cir. 2011) (per curiam) (unpublished) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)).  "But complaints alleging discrimination still must meet the 'plausibility standard' of *Twombly* and *Iqbal*." Id. (citation omitted). "So [Phillips'] complaint ha[s] to contain 'sufficient factual matter' to support a reasonable inference that [defendants] engaged in racial discrimination against [her.]" Id.[18] In

---

[18] That is, the "Eleventh Circuit recognize[s] the *Twombly* standard as controlling." Ashmore v. F.A.A., No. 11-CV-60272, 2011 WL 3915752, at *3 (S.D. Fla. Sept. 2, 2011) (alteration in original) (citation and internal marks omitted). "Thus, it appears that a plaintiff establishing a *prima facie* case of discrimination under *McDonnell* likely survives a Rule 12(b)(6) motion." Id. "However, when a plaintiff falls short of such a *prima facie* case the court must determine whether the plaintiff may have nevertheless alleged enough to survive a Rule 12(b)(6) motion." Id. In particular, "factual allegations must not be merely formulaic recitations of elements of a discrimination claim, but must instead provide enough content to suggest there was intentional discrimination based on a protected trait." Baker v. Hafez Corp., Civil Action No. 13-00641-KD-N, 2014 WL 1760976, at *9 (S.D. Ala. May 2, 2014), adopted at *1; see also Henderson, 436 F. App'x at 937 (citation omitted) (noting plaintiff could meet this standard by "alleging facts showing that similarly-situated [comparators] outside of her racial class were offered more favorable [] terms"). "If

fact, "a complaint that 'provides no . . . detail manifesting any form of racial animus, discriminatory words, prior incidents or other indications that . . . race played a role in [the employer's adverse] decision . . .' is insufficient to satisfy the minimum pleading standards of Rule 8(a)(2)." Liburd v. Bronx Lebanon Hosp. Ctr., No. 07 Civ. 11316(HB), 2008 WL 3861352, at *5 (S.D.N.Y. Aug. 19, 2008) (first alteration in original) (citations omitted).

Although Phillips complains about a myriad of actions taken against her while she has been employed with the City,[19] her first amended complaint does not contain sufficient factual allegations for her race-based disparate treatment claim under § 1981 to survive defendants' motion to dismiss.  Indeed, Phillips "pleaded no facts indicating any correlation whatsoever between her race" and any of the conduct and actions she complains about.  Bradford v. Regions Fin. Corp., Civil Action No. 2:13-CV-00642-KOB, 2013 WL 3381375, at *3 (N.D. Ala. July 8, 2013); see also Enadeghe v. Ryla Teleservices, Inc., Civil Action File No. 1:08-CV-3551-TWT,

not, the allegations are merely conclusory and not assumed to be true, and the complaint is subject to dismissal." Baker, 2014 WL 1760976, at *9 (citations omitted); see also id. (alteration in original) ("Moreover, there must be enough facts (taken as true) to make discrimination a more likely explanation.").

[19] In her response to the motion to dismiss, Phillips asserts that "the last act of discriminatory activity occurred against her on January 28, 2015," [Doc. 24 at 1], and "entailed efforts to compel [her] to return to the same work environment in which she was subjected to various acts of harassment, intimidation verbal and physical abuse," [id. at 1-2].

2010 WL 481210, at *7 (N.D. Ga. Feb. 3, 2010), adopted at *1 ("Plaintiff does not allege any facts indicating that unlawful race discrimination was the reason for her termination.").  Rather, Phillips simply alleges difficulty getting along with her supervisors and/or coworkers, and while she may have perceived that she was treated poorly because of her race, she has not alleged any facts that sufficiently demonstrate that "unlawful race discrimination was the reason for [any alleged adverse actions],"[20] or assert any other facts "tending to show that racial animus motivated [defendants]." Enadeghe, 2010 WL 481210, at *7; see also Givens v. Eddie Deen & Co. Catering, Civil Action No. 3:10-CV-1164-L, 2011 WL 624071, at *1 (N.D.

---

[20] Additionally, most of the alleged actions Phillips complains of do not rise to the level of an adverse employment action.  Rather, she complains about being assigned to work in an Interrogation Room and having to furnish her own lighting, as well as various interpersonal conflicts with her co-workers and supervisors, but the Eleventh Circuit has "clarified that 'not all conduct by an employer negatively affecting an employee constitutes adverse employment action.'" Embry v. Callahan Eye Found. Hosp., 147 F. App'x 819, 828 (11th Cir. 2005) (per curiam) (unpublished) (quoting Davis v. Town of Lake Park, 245 F.3d 1232, 1238 (11th Cir. 2001)).  "Indeed, '[a]lthough the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment.'" Id. (alteration in original) (quoting Davis, 245 F.3d at 1239).  "Thus, 'an employee must show a *serious and material* change in the terms, conditions, or privileges of employment.'" Id. (quoting Davis, 245 F.3d at 1239).  "'Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.'" Id. (quoting Davis, 245 F.3d at 1239).  Here, the only arguable adverse employment action at issue is Phillips being placed on paid administrative leave in July 2014; however, she has failed to assert any allegations to show that the decision was motivated in any way by her race.

Tex. Feb. 18, 2011) (emphasis omitted) ("A simple statement that Plaintiff believes he was fired because he is African-American is insufficient to plead a claim of race discrimination under Rule 8 of the Federal Rules of Civil Procedure.  Plaintiff must set forth specific allegations that would demonstrate that he was treated differently because of his race, that is, he must set forth sufficient allegations that race was the reason he was terminated."); Bacon v. Ga. Ports Auth., No. CV410-281, 2010 WL 5538515, at *2 (S.D. Ga. Dec. 17, 2010), adopted as modified by 2011 WL 43504, at *1 (S.D. Ga. Jan 6, 2011) (citations omitted) (dismissing Title VII complaint without prejudice where plaintiff alleges "neither direct-evidence facts ('because you're black') nor circumstantial-evidence facts (comparable white treated better)"); Washington v. Sprint Food Stores, Inc., Civil Action No. 1:10-CV-823-TWT-ECS, 2010 WL 5463137, at *2 (N.D. Ga. Dec. 2, 2010), adopted by 2010 WL 5463133, at *1 (N.D. Ga. Dec. 29, 2010) (dismissing complaint for failure to state a claim under Title VII where plaintiff alleged only that she was a black female who was fired after she refused to conduct a cash back transaction for a white customer).

The conclusory assertion in her first amended complaint that no similarly situated white employees "such as C. Traugott, Robert Moss and Edward, and others to be named during the course of this action," were assigned to work in an Interrogation Room or otherwise "subjected to the negative treatment that [she]

endured," [Doc. 19 at 19 ¶ 70, 22 ¶ 87, 25 ¶ 103, 30 ¶ 125, 34-35 ¶ 149, 39 ¶ 169], fails to plausibly suggest that defendants intentionally discriminated against Phillips because of her race, ethnicity, or color.[21]  In fact, "[t]o be an adequate comparator, the individual outside the plaintiff's protected class must be similarly situated in all relevant aspects." Hale, 2014 WL 7012772, at * 12 (internal marks omitted) (quoting Peters v. HealthSouth of Dothan, Inc., 542 F. App'x 782, 786 (11th Cir. 2013) (per curiam) (unpublished)).  The Eleventh Circuit requires that "the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." Id. (citation and internal marks omitted); see also Maniccia v. Brown, 171 F.3d 1364, 1368-69 (11th Cir. 1999) (citation omitted).

Phillips has not included any factual allegations to support her conclusory assertion that the comparators she mentions are similarly situated to her.  See Butler v. DeKalb Cty. Sch. Dist., No. 1:14-cv–1768-WSD, 2015 WL 4598292, at *11 (N.D. Ga. July 29, 2015).  "In the absence of such factual enhancement, [Phillips'] conclusory

---

[21] Phillips' allegation of other unidentified white employees "to be named during the course of this action" is "conclusory and devoid of sufficient factual enhancement to plausibly suggest that [d]efendants intentionally discriminated against [Phillips] because of [her] race." Hale, 2014 WL 7012772, at *12.  Moreover, discovery "is not intended to allow a plaintiff to go on a fishing expedition to see if the speculative complaint that [s]he has filed has any basis in fact." Lazarre v. JPMorgan Chase Bank, N.A., 780 F. Supp. 2d 1320, 1329 n.16 (S.D. Fla. 2011)(citation and internal marks omitted).

allegation[] [is] insufficient to state a claim of race discrimination." See Hale, 2014 WL 7012772, at *13 (footnote and citations omitted); see also Moultrie v. NYS Dep't of Corr. & Cmty. Supervision, No. 13-cv-5138 (NSR), 2015 WL 2151827, at *4 (S.D.N.Y. May 7, 2015) (citation omitted) (finding one of plaintiff's alleged comparators was "too vague to meet the pleading standard to raise an inference of discrimination" as plaintiff "provide[d] no details about [the comparator's] conduct"); Scruggs v. Water Works Bd. of the City of Birmingham, Civil Action No. 2:14-CV-1329-WMA, 2014 WL 5325750, at *5 (N.D. Ala. Oct. 20, 2014) (noting two of the comparators alleged by plaintiff were insufficient to give rise to an inference of discrimination as "the complaint alleges no facts to show that they [were] similarly situated to [plaintiff]"); Thompson v. N.Y.C., No. 12 Civ. 8034(PAE), 2013 WL 6409326, at *8 (S.D.N.Y. Dec. 9, 2013) (citation and internal marks omitted) (finding plaintiffs' general allegations regarding alleged comparators were "insufficient to render plausible the inference of discriminatory intent" as plaintiffs did "not specify the . . . nature of [the] alleged misconduct").  Because Phillips has not plausibly alleged that a similarly situated individual outside of her protected class engaged in conduct nearly identical to hers, but received more favorable treatment, she has failed to state a plausible claim of race discrimination under § 1981, and her complaint in this regard does not meet the requirements of Rule 8 of the Federal

32

Rules of Civil Procedure with respect to this claim.  See Hicks v. Bd. of Regents of the Univ. Sys. of Ga., No. 3:11–CV–94 (CDL), 2011 WL 6300542, at *2 (M.D. Ga. Dec. 16, 2011).  Accordingly, it is **RECOMMENDED** that Phillips' claim for discrimination based on  race, color, and ethnicity under § 1981 asserted in Count One of her first amended complaint be **DISMISSED** for failure to state a claim.  See Glover v. Donahoe, No. CV-13-BE-2040-E, 2014 WL 4829500, at *6-7 (N.D. Ala. Sept. 29, 2014), aff'd, 626 F. App'x 926 (11th Cir. 2015) (unpublished).

    **2.**    *Racial Harassment Claim*

In Count Three of Phillips' first amended complaint, she asserts a hostile work environment claim against the "government/municipal defendant," [Doc. 19-2 at 1 (all caps omitted)], based on "her status as a female her status as African-American person, being over the age of forty (40) . . . and having a history of engaging in protected activity by complaining to her employer [] that she has been subjected to acts of harassment, mistreatment and discrimination by employees of [the City's APD]," [id. at 1-2 ¶ 366].[22]

---

[22] To the extent Phillips' first amended complaint could be construed as setting forth a claim for a sex-based hostile work environment, Phillips acknowledges that she is only bringing a hostile work environment claim based on her race and age. See [Doc. 24 at 14-17].  Phillips' age-based hostile work environment claim will be addressed in conjunction with her ADEA claim.

To establish a prima facie case for a hostile work environment under § 1981, Phillips must show the following five elements:

> (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the plaintiff; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment either under a theory of vicarious or of direct liability.

Newman v. Career Consultants, Inc., 470 F. Supp. 2d 1333, 1348-49 (M.D. Ala. 2007) (citing Miller v. Kenworth of Dothan, Inc., 277 F.3d 1269, 1275 (11th Cir. 2002)). "[I]n order to state a discriminatory hostile work environment claim, [Phillips] must allege 'factual circumstances that permit the inference that [she] was subjected to a hostile work environment because of her [protected characteristic].'" Haggood v. Rubin & Rothman, LLC, No. 14-cv-34L (SJK)(AKT), 2014 WL 6473527, at *16 (E.D.N.Y. Nov. 17, 2014) (last alteration in original) (citation omitted) (quoting Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C., 716 F.3d 10, 14 (2d Cir. 2013) (per curiam)).

In her first amended complaint, Phillips alleges that the City, "through its actions and the actions of the individually named defendants, have engaged in a pattern or practice of subjecting [her] to discriminatory and disparate treatment that began subsequent to [her] reporting that she has been sexually harassed by [] Grant

and [] Johnson." [Doc. 19-2 at 2 ¶ 370]. She then recounts various actions taken by her co-workers and supervisors, including being called names while in the Validations Unit from 2009 through 2012, being transferred to an Interrogation Room in the ID Unit after having filed several grievances against almost all of her co-workers and supervisors in the Validations Unit, being called names and cursed at and having her workspace "tamper[ed]" with by her co-workers in the ID Unit, being falsely accused of sexually harassing another co-worker, being issued a performance evaluation that contained deductions that were later removed, having remarks made about her clothing and the way she walked, and being escorted to Gibbs' office and told to recant her complaints against her co-workers and supervisors. [Id. at 3-4 ¶¶ 373-78, 381-84, 5-6 ¶¶ 387-96, 11 ¶ 417, 12 ¶¶ 418, 422, 18 ¶¶ 446-49, 19 ¶¶ 450-54, 24-25 ¶¶ 473-83]. Phillips' first amended complaint, however, fails to allege a plausible claim that any harassment she experienced was because of her protected characteristics. In fact, her allegations are that the harassment she allegedly endured "occurred as a result of her being compelled to cooperate as a witness in a corruption investigation," as well as "because she engaged in protected activity of having made a prior complaint of sexual harassment," [Doc. 24 at 16], but not because of her race, color, or ethnicity.

Put simply, Phillips' allegations do not support a plausible claim that her race, color, or ethnicity played any part in the actions allegedly committed by the various defendants, and thus, Phillips' claim for racial harassment in violation of § 1981 is due to be dismissed.[23]  See Edwards v. Prime, Inc., 602 F.3d 1276, 1301 (11th Cir. 2010) (affirming district court's dismissal of plaintiff's claim for hostile work environment under § 1981 because he "d[id] not plausibly allege that he was harassed because [of his race]" where his allegations showed that he was harassed because of a reason unrelated to any protected characteristic); Phillips v. United Parcel Serv., No. 3:10-CV-1197-G-BH, 2011 WL 2680725, at *7 (N.D. Tex. June 21, 2011), adopted by 2011 WL 2678949, at *1 (N.D. Tex. July 8, 2011), aff'd, 485 F. App'x 676 (5th Cir. 2012) (per curiam) (unpublished) (dismissing plaintiff's claim of racial

----

[23] Indeed, Phillips alleges that defendants "discriminated against [her] in the performance of her employment contract and in the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship by creating, encouraging and condoning a hostile work environment and engaging in numerous and continuous acts of retaliation in which disparate treatment and discipline based on race, ethnicity, and color were pervasive, all in violation of . . . § 1981," [Doc. 19-2 at 39 ¶ 535], and that "[b]ut for [her] race as an African-American person . . . and history of engaging in protected activity which includes complaining against being subjected to acts of discrimination and sexual harassment, [she] would not have endured the negative treatment," [id. at 29 ¶ 496].  However, these "broad statement[s] . . . [are] merely a formulaic recitation of the elements of a [§ 1981] claim and, standing alone, do[] not satisfy the pleading standard of . . . Rule 8."  Grissett v. H.J. Baker Bros., CIVIL ACTION 15-0072-WS-C, 2015 WL 5734452, at *3 (S.D. Ala. Sept. 30, 2015) (last alteration in original) (citation and internal marks omitted) (finding plaintiff's statement that defendant created a hostile work environment was not sufficient to state a claim).

harassment because there were "no [] factual allegations in the complaint to suggest that the alleged actions were taken based on her race"). Accordingly, it is hereby **RECOMMENDED** that Phillips' § 1981 claim for race-based hostile work environment be **DISMISSED** for failure to state a claim.

## D.   Title VII Retaliation Claim

In Count Two of her first amended complaint, Phillips asserts a Title VII retaliation claim based on her 2002 complaint of sexual harassment. See [Doc. 19-1 at 1]. Specifically, Phillips asserts that defendants "have engaged in a pattern or practice of subjecting [her] to discriminatory and disparate treatment that began subsequent to [her] reporting that she has been sexually harassed by [Grant] and [Johnson]," [id. at 3 ¶ 204], and that "[b]ut for [her] race as an African-American person and sex as a female and history of engaging in protected activity which includes complaining against being subjected to acts of discrimination and sexual harassment, [she] would not have endured the negative treatment," [id. at 10 ¶ 241, 14 ¶ 263, 20 ¶ 290, 27 ¶ 323]. In her response in opposition to defendants' motion to dismiss, Phillips again reiterates that she "has plead that the acts of retaliation began because of her prior complaint of sexual harassment," and that "the acts of retaliation she alleges in this action occurred in close proximity and on a continuous basis." [Doc. 24 at 13-14].

Title VII provides that it is "an unlawful employment practice for an employer to discriminate against any of [its] employees or applicants for employment" because the employee has opposed unlawful discrimination by her employer or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" concerning unlawful discrimination by her employer. 42 U.S.C. § 2000e-3(a).[24]  To establish a prima facie case of retaliation under Title VII, Phillips must show that (1) she engaged in statutorily protected activity; (2) she suffered a materially adverse employment action; and (3) the adverse action was caused by her engaging in protected activity.  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006); Hurlbert v. St. Mary's Health Care Sys., Inc., 439 F.3d

---

[24]  "Protected activity" under Title VII can take the form of either opposition to an employer's unlawful employment practice or participation in a proceeding under Title VII.  See 42 U.S.C. § 2000e-3(a).  These two prohibitions on retaliation are generally known as the opposition clause and the participation clause, respectively. E.E.O.C. v. Total Sys. Servs., Inc., 221 F.3d 1171, 1174 (11th Cir. 2000); Enadeghe, 2010 WL 481210, at *8 (citation omitted).  This distinction is important because the requirements and protections under each clause are different.  See Merritt v. Dillard Paper Co., 120 F.3d 1181, 1187 (11th Cir. 1997) (citation omitted) (noting that the participation clause is "not so limited" as the opposition clause).  Indeed, Title VII defines an "unlawful employment practice" as, inter alia, discrimination against an employee "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Thus, only opposition to discrimination on the basis of race, color, religion, sex, or national origin, the categories protected by Title VII, constitutes "protected activity."  See Sridej v. Brown, 361 F. App'x 31, 35 (11th Cir. 2010) (per curiam) (unpublished) (citations omitted).

1286, 1297 (11th Cir. 2006) (citations omitted); <u>Brochu v. City of Riviera Beach</u>, 304

F.3d 1144, 1155 (11th Cir. 2002) (citation omitted).[25]

Phillips has not specified whether her retaliation claim is based on the

opposition clause, the participation clause, or both, <u>see generally</u> [Doc. 19]; in any

event, however, Phillips has failed to state a viable claim for retaliation under Title

VII because she has failed either to adequately allege that she engaged in protected

activity or to allege facts that would warrant a reasonable inference that any possible

adverse actions were causally connected to any protected activity.  Phillips argues

that she "has plead that she complained of the harassment, mistreatment and

discrimination she received to her supervisors and her chain of command."  [Doc.

24 at 13].

First, Phillips' conclusory allegation that she has repeatedly engaged in

protected activity is insufficient to show that she engaged in activity protected under

Title VII.  <u>See</u> <u>Golfin v. Alorica Inc.</u>, No. 8:15-cv-127-T-36TGW, 2015 WL 1862932, at

*4 (M.D. Fla. Apr. 23, 2015) (finding plaintiff's "conclusory allegation that [she]

attempted to exercise her rights" cannot "support the element of 'protected activity'

---

[25] Additionally, the Supreme Court has concluded that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  <u>Univ. of Tex. Sw. Med. Ctr. v. Nassar</u>, 133 S. Ct. 2517, 2528 (2013) (citation omitted).  Thus, Phillips must show that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."  <u>Id.</u> at 2533.

in her retaliation claim"); see also Butler v. Emory Univ., 45 F. Supp. 3d 1374, 1384

(N.D. Ga. 2014) ("[I]f [plaintiff] did not oppose a Title VII violation, he could not

have engaged in conduct that is protected by the anti-retaliation provision."); Smith

v. Wynfield Dev. Co., 451 F. Supp. 2d 1327, 1349 (N.D. Ga 2006).  Indeed, Phillips

provides little to no details about the numerous grievances she has filed against her

co-workers over the years, and thus, she has not plausibly alleged that any

harassment or retaliation she experienced in response to filing those grievances was

based on conduct protected by Title VII.  See [Doc. 19-1 at 4 ¶¶ 207-11 (alleging she

complained about name calling and employees lunging at her while she was sitting

at her desk), 8  ¶¶  233, 235-36 (alleging she complained of her co-workers'

"behaviors," including name calling and the placement of trash in her workspace),

9-10 ¶¶ 239-40 (alleging she suffered "mistreatment and harassment" as a result of

having filed grievances against employees without providing any details about

those grievances), 10-13 ¶¶ 243-45, 250-51, 253, 257 (complaining about name calling

and an employee's "threats against [] bodily safety"), 29 ¶ 329 (alleging she

submitted "complaints" against various individual defendants with no supporting

details about what those "complaints" were)].

  To the extent that Phillips relies on her 2002 complaint of sexual harassment

to support the protected activity element, she has not alleged facts showing

sufficient temporal proximity between a materially adverse action and her 2002 complaint,[26] or otherwise presented evidence tending to show that any alleged materially adverse action was motivated by a retaliatory animus. In fact, defendants argue that Phillips has not even sufficiently alleged that they took any materially adverse actions against her, see [Doc. 22 at 14], and Phillips has failed to address this argument adequately, see [Doc. 24 at 13-14]. The "scope of [Title VII's] anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" and "is not limited to discriminatory actions that affect

---

[26] A causal connection may be established either through direct evidence of retaliatory animus or by circumstantial evidence, including a showing that Phillips suffered the adverse actions shortly after she engaged in the protected activity. See Sumner v. U.S. Postal Serv., 899 F.2d 203, 209 (2d Cir. 1990) (citations omitted); Soloski v. Adams, 600 F. Supp. 2d 1276, 1362 (N.D. Ga. 2009), adopted at 1322 (citations omitted). Phillips cannot establish the causal connection element of her retaliation claim because the only two conceivable adverse employment actions, which for the reasons further discussed are not even materially adverse, are far too attenuated from her 2002 sexual harassment complaint. Indeed, there was at least a 10-year delay between her 2002 complaint and being transferred to the ID Unit, which according to her allegations occurred because of her own intervening actions of filing additional grievances against her co-workers, and a 12-year delay between her 2002 complaint and the July 2014 incident that led to her being placed on paid administrative leave, and Phillips has not alleged any other facts to show causation. See Stinson v. Pub. Serv. Tel. Co., 486 F. App'x 8, 11 (11th Cir. 2012) (per curiam) (unpublished) (concluding that plaintiff, who "did not present any other evidence of causation," failed to establish a prima facie case of retaliation based on a "six month gap" between the protected activity and the adverse employment action); Sierminski v. Transouth Fin. Corp., 216 F.3d 945, 951 (11th Cir. 2000) (holding that a 7-month time period between the protected activity and the adverse employment action is too indirect to satisfy the causal connection requirement).

the terms and conditions of employment." <u>Burlington N.</u>, 548 U.S. at 64, 67 (citation omitted).  Therefore, an employee claiming retaliation need not show an adverse action that actually affected the terms and conditions of her employment.  <u>Crosby v. Mobile Cty. Pers. Bd.</u>, No. 05-17039, 2007 WL 245126, at *4 (11th Cir. Jan. 30, 2007) (per curiam) (unpublished) (citation omitted); <u>Arnold v. Tuskegee Univ.</u>, 212 F. App'x 803, 810 n.4 (11th Cir. 2006) (per curiam) (unpublished) (citation omitted). Instead, Phillips must allege that she suffered an action which a reasonable employee would find "materially adverse," that is, an action harmful to the point that it "could well dissuade a reasonable worker from making or supporting a charge of discrimination." <u>Burlington N.</u>, 548 U.S. at 57.  That is, "[a] challenged action must do more than merely affront a 'plaintiff's unusual subjective feelings' and cannot be a trivial harm that offends 'a general civility code for the American workplace.'" <u>Manns v. City of Atlanta</u>, Civil Action File No. 1:06-CV-0609-TWT, 2008 WL 150699, at *8 (N.D. Ga. Jan. 11, 2008) (quoting <u>Burlington N.</u>, 548 U.S. at 68). And, "[a]lthough Title VII's protection against retaliatory discrimination extends to adverse actions which fall short of ultimate employment decisions, the plaintiff must still demonstrate some threshold level of substantiality." <u>Wesolowski v. Napolitano</u>, 2 F. Supp. 3d 1318, 1348 (S.D. Ga. 2014) (citation and internal marks omitted). Moreover, "the *Burlington* standard does not excuse a plaintiff from [her] obligation

42

to actually show that the conduct at issue would objectively deter [her] from engaging in statutorily protected activity." Archibald v. United Parcel Serv. Co., 33 F. Supp. 3d 1301, 1321 (N.D. Ala. 2014), aff'd, 620 F. App'x 836 (11th Cir. 2015) (per curiam) (unpublished) (citation omitted).

The allegations in Phillips' first amended complaint make clear that defendants' "actions did *not* deter [Phillips] from engaging in statutorily protected conduct," id. (citation omitted), as she alleges that she repeatedly complained about various conduct that has occurred in three different subdivisions of the APD over the span of a decade and has filed two EEOC charges of discrimination, one of which is the subject of Phillips I. Therefore, none of the conduct at issue here dissuaded Phillips from making numerous internal complaints and charges of discrimination with the EEOC.[27]  See Cayemittes v. City of N.Y. Dep't of Housing

----

[27] To the extent that Phillips is attempting to allege that the harassment itself was a materially adverse employment action, while the Eleventh Circuit "recently recognized a cause of action for retaliatory harassment, [i]n order to demonstrate such harassment, [] [Phillips] must show that the actions of the defendant[s] altered the condition of the workplace, creating an objectively abusive and hostile atmosphere." Aristyld v. City of Lauderhill, 543 F. App'x 905, 909 (11th Cir. 2013) (per curiam) (unpublished) (citations and internal marks omitted). "That is, to establish a prima facie case of retaliatory harassment, the allegedly adverse actions must [still] meet [Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993), standard]." Swindle v. Jefferson Cty. Comm'n, 593 F. App'x 919, 928-29 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted).  Here, the allegations in the first amended complaint simply "do not come close to establishing a prima facie case of retaliatory harassment under *Harris*'s standard[.]"  Id. at 929.  Indeed, Phillips' allegations of harassment, which include being called names such as "crazy" or "bitch," being

Preservation & Dev., 974 F. Supp. 2d 240, 261 n.16 (S.D.N.Y. 2013), aff'd, 2016 WL 860063 (2d Cir. Mar. 7, 2016) (unpublished) (collecting cases showing no material adversity where plaintiff was clearly not dissuaded from making complaints or filing charges of discrimination).  Thus, Phillips' "own conduct demonstrates that any reaction by [d]efendants to her complaints . . . did not dissuade her from continuing to make complaints" and "[t]his negates any claim that the alleged harassment directed toward [Phillips] constituted an adverse action for purposes of establishing a retaliation claim."[28]  Matthews v. Corning Inc., 77 F. Supp. 3d 275, 298

---

harassed about her clothing or the way she decorated her desk, being assigned to an Interrogation Room turned into an office in which she had to provide her own lamp, co-workers moving a garbage can into her workspace, and being escorted to a meeting during which she was asked to recant some unspecified complaints against her co-workers and became so upset that she collapsed and had to be taken to the hospital via ambulance, among other allegations, see generally [Doc. 19], amount to nothing than more than isolated incidents among different co-workers and supervisors, which are generally insufficient to establish a hostile work environment claim, see Swanson v. Civil Air Patrol, 37 F. Supp. 2d 1312, 1324 (M.D. Ala. 1998) (second alteration in original) (internal marks omitted) (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998)) ("[I]solated incidents (unless extremely serious) will not amount to  discriminatory changes in the 'terms and conditions of employment.'"); see also Butler v. Ala. Dep't of Transp., 536 F.3d 1209, 1214 (11th Cir. 2008); Barrow v. Ga. Pac. Corp., 144 F. App'x 54, 57-58 (11th Cir. 2005) (per curiam) (unpublished); see also Terrell v. Paulding Cty., 539 F. App'x 929, 934 (11th Cir. 2013) (per curiam) (unpublished) (citation and internal marks omitted) ("[M]ere ostracism in the workplace is not grounds for a retaliation claim[.]").

[28] Furthermore, Phillips has not alleged that defendants took any retaliatory actions against her following the filing of her most recent EEOC charge in February 2015.  See generally [Doc. 19-1 at 1-39 ¶¶ 194-363].  In fact, as noted earlier, in her response to the motion to dismiss, Phillips asserts that "the last act of discriminatory

(W.D.N.Y. 2014) (citation omitted).  Accordingly, the Court finds that Phillips' has

failed to state a plausible claim for retaliation under Title VII, and it is therefore

**RECOMMENDED** that her retaliation claim be **DISMISSED**.

**E.     ADEA**

In Count Four of her first amended complaint, Phillips asserts a claim against

the City for age discrimination, in violation of the ADEA.  [Doc. 19-3 at 1-40 ¶¶ 537-

708].  In addition, it appears that Phillips also asserts a hostile work environment

claim based on her age in Count Three of her first amended complaint.  See [Doc. 19-

2 at 1-2 ¶ 366].  For the reasons that follow, Phillips has failed to state a plausible

claim for age discrimination or a hostile work environment pursuant to the ADEA.

**1.     *Age Discrimination Claim***

The ADEA prohibits an employer from "fail[ing] or refus[ing] to hire or []

discharg[ing] any individual or otherwise discriminat[ing] against any individual

with respect to [her] compensation, terms, conditions, or privileges of employment,

because of such individual's age."  E.E.O.C. v. Darden Rests., Inc., CASE NO. 15-

---

activity occurred against her on January 28, 2015," [Doc. 24 at 1], and "entailed
efforts to compel [her] to return to the same work environment in which she was
subjected to various acts of harassment, intimidation verbal and physical abuse," [id.
at 1-2].  However, Phillips has not alleged this action as a basis for her retaliation
claim in her first amended complaint, see generally [Doc. 19-1], and to the extent that
she intended to do so, she fails to state a plausible claim of retaliation on this basis
as well.

20561-CIV-LENARD/GOODMAN, 2015 WL 6865735, at *3-4 (S.D. Fla. Nov. 9, 2015) (citation omitted) (quoting 29 U.S.C § 623(a)(1)). "The protected age group is 40 or older." Eldredge v. EDCare Mgmt., Inc., Nos. 13-61373-Civ, 12-61984, 2014 WL 590336, at *1 (S.D. Fla. Feb. 14, 2014) (citing 29 U.S.C. § 631(a)).

"To state a claim under [the] ADEA, [Phillips] must allege the following elements: (1) she was a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified to do the job; and (4) she was replaced by or otherwise lost a position to a younger individual."[29] Arafat v. Sch. Bd. of Broward Cty., 549 F. App'x 872, 875 (11th Cir. 2013) (per curiam) (citation omitted); Hudson v. Shaw Envtl. & Infrastructure, Inc., 267 F. App'x 892, 893 (11th Cir. 2008) (per curiam) (unpublished) (citation omitted). The last element "may also include an analysis of whether similarly situated employees outside the protected class received favorable treatment." Jennings v. City of Tuscaloosa, No. 7:13-cv-00874-LSC, 2013 WL 5299304, at *5 (N.D. Ala. Sept. 19, 2013) (citing Addison v. Ingles Mkts., Inc., 515 F. App'x 840, 844 (11th Cir. 2013) (per curiam) (unpublished);

---

[29] Although the Supreme Court has not "'definitively decided whether the evidentiary framework of *McDonnell Douglas Corp. v. Green* utilized in Title VII cases is appropriate in the ADEA context,'" the Eleventh Circuit "'ha[s] continued to evaluate ADEA claims based on circumstantial evidence under the *McDonnell Douglas* framework.'" Humphrey v. Napolitano, 517 F. App'x 705, 708 (11th Cir. 2013) (per curiam) (unpublished) (quoting Gross v. FBL Fin. Servs, Inc., 557 U.S. 167, 175 n.2 (2009); Sims v. MVM, Inc., 704 F.3d 1327, 1332 (11th Cir. 2013)).

MacPherson v. Univ. of Montevallo, 922 F.2d 766, 774 (11th Cir. 1991)). Additionally, "[u]nder the ADEA, [plaintiff] 'must prove, by a preponderance of the evidence, that age was a 'but-for' cause of the challenged adverse employment action.'" Burke v. Lab. Corp. of Am., No. 8:08cv02072oTo24oTGW, 2009 WL 3242014, at *3 (M.D. Fla. Oct. 6, 2009) (quoting Gross, 557 U.S. at 179); see also Hawthorne v. Baptist Hosp. Inc., 448 F. App'x 965, 968 (11th Cir. 2011) (per curiam) (unpublished) (citations omitted); Ficklin v. Bibb Cty. Sch. Dist., Civil Action No. 5:09-CV-191 (MTT), 2011 WL 672327, at *5 (M.D. Ga. Feb. 17, 2011) (citation omitted). As previously noted, "[w]hile a plaintiff need not specifically plead each and every element of a prima facie case of discrimination to survive a motion to dismiss," Dawson v. Wal-Mart Stores E., LP, CIVIL ACTION NO. 2:15-cv-1799-WMA, 2016 WL 212984, at *2 (N.D. Ala. Jan. 19, 2016) (citation omitted), Phillips' first amended complaint "still must meet the plausibility standard of *Twombly* and *Iqbal*," Eldredge, 2014 WL 590336, at *2 (citation and internal marks omitted), which "[she] may meet . . . by alleging facts showing that similarly-situated employees outside of the protected class (*i.e.*, younger than 40 . . .) were treated more favorably with respect to an employment decision," id. (citations omitted).  However, the comparator "must be nearly identical to [Phillips]." Id. (citation omitted).

In her first amended complaint, Phillips alleges that she "is one of the very few employees who are over the age of fifty," [Doc. 19-3 at 1 ¶ 539], and she then repeats the same allegations of harassment that form the basis of all of her other claims, see [id. at 1-40 ¶¶ 540-708].[30]  She also alleges that "other employees in the ID Unit, including [d]efendants [Acevedo], Bristrow, Cain, James and others to be named are all under the age of forty (40) and were not subjected to the treatment that [she] was subjected to," [id. at 2-3 ¶ 549]; see also [id. at 40 ¶ 706], and that "but for [her] race as an African-American person and sex as a female, age as an individual who is over the age of forty [] and her history of engaging in protected activity . . ., [she] would not have endured the negative treatment from [d]efendants," [id. at 10 ¶582].  In her response to defendants' motion to dismiss, Phillips states that she has "plead that the treatment she has received negatively impacted her employment and that the [d]efendant employer was responsible." [Doc. 24 at 18 (citation omitted)].

---

[30] The only additions to her factual allegations under her ADEA claim are that on one occasion, unidentified defendants remarked that she was too old to be wearing dresses and walking around in heels, see [Doc. 19-3 at 5 ¶ 564], that on another occasion, her co-worker Cage remarked that she was "too old for a dress," [id. at 11 ¶ 587 (internal marks omitted)], and that on another occasion, defendants Lee and Love remarked that she was too old for a dress and that she "should be cold because she wore a dress," [id. at 18-19 ¶ 622 (internal marks omitted)].

Similar to her § 1981 race discrimination claim, Phillips' first amended complaint does not contain sufficient factual allegations for her age discrimination claim to survive defendants' motion to dismiss.  Indeed, Phillips has failed to allege facts that plausibly support a claim that any similarly situated person outside her protected class was treated more favorably,[31] and that any adverse employment action was because of her age.  Indeed, she repeatedly asserts that all of the harassment she endured was due to her cooperation in a corruption investigation sometime in early 2000, because she complained of sexual harassment in 2002, and because she accused employees of selling police reports to the public sometime between 2005 and 2010.  See [Doc. 19 at 11 ¶¶ 23-26, 12 ¶¶ 29-31, 34; Doc. 19-1 at 3 ¶¶ 201-04].  In fact, she even alleges that her transfer to the Interrogation Room in the ID Unit occurred because of her having filed grievances against certain employees in the Validations Unit, not because of her age.  See [Doc. 19-3 at 1 ¶ 540].  Put simply, Phillips "has failed to allege any facts demonstrating that [her] age

---

[31] "Absent any allegations of fact suggesting that the individuals younger than [Phillips] were similarly situated to [her] in any relevant respect, the Court cannot reasonably infer that [Phillips'] age had any bearing on [the alleged adverse actions]," let alone that age was the but-for cause of these actions. See Pinkney v. Maverick Condo. Ass'n, Inc., No. 6:11-cv-241-Orl-19DAB, 2011 WL 1699928, at *3 (M.D. Fla. May 5, 2011) (citation and internal marks omitted). And, "[t]hat [Phillips] subjectively believes that [s]he was treated differently than similarly situated employees is insufficient to support an inference of disparate treatment." Green v. Savage of Ga., LLC, CASE NO.: 1:14–CV–132 (LJA), 2015 WL 5120241, at *4 (M.D. Ga. Aug. 27, 2015) (citation omitted).

played a role in [any of the alleged] adverse employment decision[s]." Green, 2015 WL 5120241, at *4 (citation omitted).   Accordingly, it is **RECOMMENDED** that Phillips' age discrimination claim be **DISMISSED** for failure to state a claim.

### 2.   *Hostile Work Environment Claim*

In Count Three of her first amended complaint, Phillips asserts that "she is eligible to pursue her claim of hostile work environment against [the City] due to her . . . status as African-American person, being over the age of forty [] at the time the allegations in this claim occurred and having a history of engaging in protected activity[.]"  [Doc. 19-2 at 1-2 ¶ 366].  In her response in opposition to defendants' motion to dismiss, Phillips contends that because she has "plead that her claims of hostile work environment occurred as a result of her being compelled to cooperate as a witness in a corruption investigation" and for "engag[ing] in the protected activity of having made a prior complaint of sexual harassment" and that "she is a member of multiple protected classes . . . including being . . . over the age of forty," she "has met her obligation to plead a cause of action for hostile work environment to survive dismissal."  [Doc. 24 at 16-17]; see also [id. at 18].

As previously discussed with respect to her race-based hostile work environment claim, to establish that she was subjected to a hostile work environment based on her age, Phillips must allege sufficient facts to show that: "(1)

she belongs to a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based on age; (4) the harassment affected a term, condition, or privilege of employment, and (5) there is a basis for holding the employer liable for the conduct of the harassers." Alexander-Igbani v. DeKalb Cty. Sch. Dist., Civil Action No. 1:11–CV–4535–AT–JSA, 2012 WL 9508020, at *6 (N.D. Ga. Dec. 21, 2012), adopted at *1 (footnote and citation omitted).[32] "To establish that the harassment affected a condition of her employment, . . . [Phillips] must show that the [d]efendant[s'] actions were so severe or pervasive that they altered the conditions of the workplace, creating an objectively abusive and hostile atmosphere." Id. (citations omitted). And, "[i]t is not enough that [Phillips] subjectively perceived the working climate as inhospitable; the harassment must be such that a reasonable person in [Phillips'] position would find that the harassing conduct produced a material alteration in the working environment." Id. (citation omitted).

Phillips, at most, alleges three isolated incidents involving different co-workers that commented on her being too old to wear dresses and heels, see [Doc. 19-3 at 5 ¶ 564, 11 ¶ 587, 18-19 ¶ 622]; however, "simple teasing, . . . offhand

_____

[32] "The Eleventh Circuit has never decided in a published opinion whether a hostile work environment claim is cognizable under . . . the ADEA," but "[f]or purposes of [defendants'] motion, the Court assumes such a claim is viable." Nurse v. Teleperformance, Inc., 1:15-CV-94, 2016 WL 3766374, at *4 n.2 (S.D. Ga. July 8, 2016) (first alteration in original) (citations and internal marks omitted).

comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment," <u>Alexander-Igbani</u>, 2012 WL 9508020, at *6 (alterations in original) (citation and internal marks omitted).  Moreover, Phillips has failed to allege that any of the other "negative treatment" she endured was because of her age.  In sum, Phillips' allegations "fall[] far short of alleging sufficient facts to state a plausible claim that [s]he was subjected to severe or pervasive harassment that resulted in a hostile work environment based on age." <u>Collins v. Fulton Cty. Sch. Dist.</u>, Civil Action No. 1:12–CV–1299–ODE–JSA, 2012 WL 7802745, at *19 (N.D. Ga. Dec. 26, 2012) (citations omitted).  Accordingly, it is **RECOMMENDED** that Phillips' claim for age-based hostile work environment be **DISMISSED** for failure to state a claim.[33]

---

[33] Phillips also asserts that she was discriminated against in violation of the Fourteenth Amendment's Equal Protection Clause, as enforced through § 1983. [Doc. 19-4 at 1-42 ¶¶ 709-877].  In particular, Phillips alleges that defendants "violated [her] right under the Fourteenth Amendment of the United State[s] Constitution to be protected under the provisions within Title VII and 42 U.S.C. § 1983 on the basis of [her] status as an African-American, a person who is over the age of forty [], [her] status as a person who has historically complained against being subjected to discriminatory treatment[.]" [<u>Id.</u> at 8 ¶ 740].  Because Phillips' federal claims fail as a matter of law, she has not demonstrated that her rights under the Equal Protection Clause and § 1983 to be free from discrimination have been violated, and she has failed to allege a violation of any other federally protected right.  In addition, "to hold a municipality, county, or local governmental entity liable under § 1983, a plaintiff must further show that the deprivation of rights occurred pursuant to an official 'custom' or 'policy' of that municipality or county," <u>Collins</u>, 2012 WL 7802745, at *19 (citations omitted), which Phillips has not alleged anywhere in her first amended complaint.  Accordingly, it is **RECOMMENDED**

F.  **State Law Claims**

Phillips also alleges state law claims for a violation of the Georgia Whistleblower Act; false arrest; false imprisonment; negligent hiring, retention, and supervision; negligent infliction of emotional distress; intentional infliction of emotional distress; and for attorney's fees and punitive damages.  See [Docs. 19-5, 19-6, 19-7, & 19-8].  Although supplemental jurisdiction may be exercised over state law claims related to federal claims in any action in which the Court has original jurisdiction, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988) (footnote and citation omitted).  Indeed, "[t]he federal courts of appeals[] . . . have uniformly held that once the district court determines that subject matter jurisdiction over a plaintiff's federal claims does not exist, courts must dismiss a plaintiff's state law claims," Scarfo v. Ginsberg, 175 F.3d 957, 962 (11th Cir. 1999) (citations omitted), and the Eleventh Circuit has therefore "encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial," Young v. City of Gulf Shores, Civil Action No. 07-0810-WS-M, 2009 WL 920302, at *1 (S.D. Ala. Apr. 2, 2009)

---

that defendants' motion to dismiss Count Five of Phillips' first amended complaint be **GRANTED**.

(internal marks omitted) (citing <u>Raney v. Allstate Ins. Co.</u>, 370 F.3d 1086, 1089 (11th Cir. 2004) (per curiam)).

Since Phillips has failed to allege any viable federal claims, if the recommendation to dismiss all the federal claims is adopted, it is **RECOMMENDED** that the District Court decline to exercise supplemental jurisdiction over the remaining state law claims and dismiss those claims without prejudice. <u>See</u> <u>Ingram v. Sch. Bd. of Miami-Dade Cty.</u>, 167 F. App'x 107, 108-09 (11th Cir. 2006) (per curiam) (unpublished) (citation and internal marks omitted) (noting where federal claims are dismissed before trial, dismissal of state claims is "strongly encourage[d] or even require[d]"); <u>see also</u> <u>Coleman v. Walmart</u>, No. 6:14-CV-672-Orl-22GJK, 2015 WL 1257064, at *6 (M.D. Fla. Mar. 18, 2015), adopted at *1 (finding federal claims should be dismissed and recommending that the court decline to exercise supplemental jurisdiction over remaining state law claims and dismiss them without prejudice); <u>Anderson v. Dunbar Armored, Inc.</u>, 678 F. Supp. 2d 1280, 1327 (N.D. Ga. 2009), adopted at 1290 (finding the only remaining claims were state law claims and those "claims [we]re best left for the Georgia courts").[34]

---

[34] As noted earlier, Phillips requests an opportunity to amend her complaint within her response to defendants' motion to dismiss, <u>see</u> [Doc. 24 at 5-6, 23 (noting that she "has provided a complaint in which each and every count for relief can be separated and analyzed so as to identify any need for amendments" and that the first amended complaint "is fully capable of being amended to provide even further notice to [d]efendants as to the claims and allegations")], but she has failed to

### III.   CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that defendants' motion to dismiss, [Doc. 22], be **GRANTED**, that defendants' alternative motion for a more definite statement be **DENIED AS MOOT,** that Phillips' federal claims be **DISMISSED**, and that the Court decline to exercise supplemental jurisdiction over the remaining state law claims and **DISMISS** those claims without prejudice.

The Clerk of Court is **DIRECTED** to terminate this referral.

**IT IS SO RECOMMENDED**, this 29th day of July, 2016.

_Russell G. Vineyard_
RUSSELL G. VINEYARD
UNITED STATES MAGISTRATE JUDGE

---

properly request leave to amend her complaint.  That is, a request for leave to amend a pleading is not properly made when simply included in a response to a motion.  See Long v. Satz, 181 F.3d 1275, 1279-80 (11th Cir. 1999) (per curiam) (citations omitted).  Instead, "filing a written motion that sets forth the substance of a proposed amendment is the proper method to request leave to amend the complaint," Johnson v. Boyd, 568 F. App'x 719, 723 (11th Cir. 2014) (per curiam) (unpublished) (citation omitted), which Phillips has not done.  Furthermore, even if Phillips' request to amend in her response in opposition was proper, the "denial of leave to amend is justified by futility[.]"  Hall v. HSBC Mortg. Servs., Inc., No. 1:13–cv–1964–WSD, 2014 WL 949997, at *4 (N.D. Ga. Mar. 11, 2014), aff'd, 581 F. App'x 800 (11th Cir. 2014) (per curiam) (unpublished) (citation and internal marks omitted).